RECEIVED
USDC. CLERK. CHARLESTON. SC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA 2010 FEB -9  A 10: 52

| | | |
|---|---|---|
| Titus Williams, #189883, | ) | C. A. No. 2:09-1685-MBS-RSC |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden McCall, Perry | ) | |
| Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |

This habeas corpus petition under 28 U.S.C. § 2254 brought
by a state prisoner proceeding pro se and in forma pauperis is
before the undersigned United States Magistrate Judge for a
report and recommendation on the respondents' motion for summary
judgment filed on October 23, 2009.  28 U.S.C. § 636(b).

## PROCEDURAL HISTORY

The petitioner, Titus Williams, is presently confined to
Perry Correctional Institution pursuant to Orders of Commitment
from the Clerk of Court from York County.  Petitioner was
indicted by the York County Grand Jury for possession of crack
cocaine (01-GS-46-03013) (PCR App. 429-30), distribution of crack
cocaine (01-GS-46-03014) (PCR App. 427-28), and distribution of
crack cocaine within proximity of a park or playground (01-GS-46-
03015) (PCR App. 431 -32).

Petitioner was represented at the trial level by John
O'Leary, Esquire.  From September 16th to 18th, 2002, Petitioner

1

was tried before the Honorable John C. Hayes, III, and a jury. At the close of the State's case, Judge Hayes granted a directed verdict on the possession charge. (PCR App. 321-33). The jury convicted Petitioner as charged on the remaining offenses. (PCR App. 410). On September 18, 2001, Judge Hayes sentenced Petitioner to thirty (30) years and a $100,000 fine for distribution, and a concurrent fifteen (15) years and a $20,000 fine for the proximity charge. (PCR App. 415; 633; 638). A motion to reconsider sentence was made, and after a hearing on October 10, 2002, it was denied.

Petitioner filed a direct appeal with the South Carolina Court of Appeals. Wanda H. Haile, of the South Carolina Office of Appellate Defense, was appointed to represent Petitioner in his appeal. On December 2, 2003, she filed with the South Carolina Court of Appeals a "no merit" Final Anders Brief of Appellant and Petition to be Relieved as Counsel, in which she raised the following claim:

> The lower court erred in issuing an illegal sentence in the case.

(PCR App. 435). The State filed a letter response to the Anders brief. Petitioner then filed four pro se briefs. The first one was received October 8, 2003, in which the following claim was raised:

> Whether the court erred when it denied appellant's motions for mistral where there was extraneous and

2

prejudicial character evidence presented before the jury in violation of State v. Lyle and its progeny.

The second was filed December 5, 2004, in which the following claim was raised:

The court erred when it overruled Appellant's objection, denied Appellant's Motion for Mistrial, and refuse to give a curative instruction where there was extraneous and prejudicial character evidence presented before the jury.

The third was filed on January 2, 2004, in which the following claim was raised:

Whether trial court erred when it refused to charge as to failure to a witness in violation of the Sixth Amendment.

The fourth one was filed on January 20, 2003, in which the following claim was raised:

The trial court erred in not dismissing Appellant's arrest warrant and charge, inasmuch the basis for the warrant was the identification by the confidential informant which came after the warrant was issued.

The state court of appeals issued an opinion on May 5, 2004, in which it affirmed the convictions. State v. Murphy, 2004-UP-299 (S.C. Ct. App. 2004) (PCR App. 446). The Remittitur was sent down on June 8, 2004.

The Petitioner next filed a pro se Application for Post-Conviction Relief (APCR) on June 22, 2004, (04-CP-46-1499), in which he asserted the following issues:

(a) Trial counsel rendered ineffective assistance, inasmuch he failed to suppress the

> evidence of the latex gloves and tin foil with
> crack residue found in a kitchen cabinet, a spoon
> with residue found in a bedroom and crack that was
> found on a t.v..
>
> (b)  Trial and Appellant counsel rendered
> ineffective assistance, inasmuch both failed to
> know the law and facts surrounding Applicant's
> charge of Distribution within the Proximity of
> public park or playground under §44-53-445.
>
> (c)  Trial counsel rendered ineffective
> assistance, inasmuch as he failed to introduce
> into evidence the report he received by John H.
> Johnson, Private Investigator, which trial counsel
> hired.

(PCR App. 445).  The State filed a Return and Motion to Dismiss

on September 21, 2004.  (PCR App. 452).

Petitioner or his attorney then filed a number of amended or

supplemental applications.  Petitioner first filed a "Supplement

to Application for Post-Conviction Relief", dated November 15,

2004, in which the following grounds were raised:

> (d)  The Applicant was denied effective assistance
> of trial counsel by counsel's failure to move to
> suppress drug evidence obtained by illegal
> surveillance.
>
> (e)  The applicant was denied the right to effective
> effective assistance of appellate counsel by
> counsel's failure to raise the issue of whether
> trial court erred in denying his motion to dismiss
> all charged based on a fatally defective arrest
> warrant.
>
> (f)  The applicant was denied the right to
> effective assistance of trial counsel by counsel's
> failure to object to an indictment that failed to
> confer subject matter jurisdiction.
>
> (g)  The applicant was denied the right to
> effective assistance of appellate counsel by

4

counsel's failure to raise issue of trial court's
denial of motion for mistral based on inadmissable
character evidence.

(h)   The applicant was denied the right to
effective assistance of trial counsel when counsel
failed to object to solicitor's vouching for
credibility of it's witness in closing argument.

(I)   Applicant was denied the right to effective
assistance of appellate counsel by counsel's
failure to raise the error of trial judge's denial
of trial counsel's request for a charge on
"Adverse Inference" from solicitor's failure to
produce a material witness.

(j)   The applicant was denied due process of law
as guaranteed by the fourteenth amendment due to
solicitor's knowing use of perjured testimony.

(k)   The applicant was denied the right to
effective assistance of trial counsel by counsel's
solicitation of testimony that put his character
into evidence and solicitation of prior bad acts
evidence.

(l)   The applicant was denied the right to
effective assistance of trial counsel by counsel's
failure to request specific instructions.

(m)   The applicant was denied the right to due
process of law by the solicitor's use of hearsay
testimony and denial of the right to
confrontation.

(PCR App. 463).   Next, a "Second Supplement to Original

Application for Post Conviction Relief", was filed March 4, 2006,

in which the following grounds were raised:

(n)   The applicant was denied his rights under the
sixth and fourteenth amendments of the United
States Constitution and his rights under article
1§3 and Article 1 §14 of the South Carolina
Constitution as the result of ineffective
assistance of his trial counsel.

(PCR App. 480). Thereafter, a Third Supplement to Application

for Post-Conviction Relief, was filed March 4, 2006, which

asserted:

> (o) The applicant was denied the right to
> effective assistance of appellate counsel by
> counsel's failure to raise that the trial court
> abused its discretion and committed legal error in
> permitting as evidence applicant's business
> telephone records under Rule 902 (8), SCRE, which
> unfairly prejudiced the applicant.

(PCR App. 482). A "Supplement to PCR", filed April 22, 2005,

followed in which the following was raised:

> (p) Trial court (sic) was ineffective when he
> violated the sequester order the trial Judge
> granted.
>
> (q) Trial counsel was ineffective for failing to
> introduce evidence at trial that the Applicant had
> a steady business at the time of his arrest, and
> that he had held that position since February
> 1998.
>
> r) Trial counsel was ineffective for failing to
> request a jury view of the scene where a jury view
> of the position of the car would have shown the
> Applicant's car was not at the scene and not in
> the video.
>
> (s) Trial counsel was ineffective for failing to
> suppress a statement of the confidential
> informant, Derrinda, which talked about crack
> cocaine and on the audio there was not one mention
> of crack cocaine.
>
> (t) Trial counsel was ineffective for failing to
> obtain records from the phone company, which would
> have demonstrated that Derrinda did not call the
> applicants cell phone at the time she claimed to
> have.
>
> (u) Trial counsel was ineffective for failing to
> make use of the audio tape involved in this case

to impeach law enforcement officer claiming that they heard Derrinda during the alleged drug transaction when she walked in talking and when she talked to T when she was speaking with T and T was speaking back with her. (Sic)

(v)  Trial counsel was ineffective for failing to request documentation of confidential informant being reliable.

(w)  Trial was ineffective for failing to request a charge to the trial judge to allow the impeachment of the states witness, Derrinda, by extrinstc (sic) evidence of prior inconsistent statements made at trial.

(x)  Trial counsel was ineffective for failing to inform Applicant if he testified that such testimony could be considered only on issues of credibility and not on issues of guilt.

(y)  Trial counsel was ineffective for failing to cross examine officer Terrill Harris, concerning whether he had paid the confidential informant Derrinda for working on this case.

(z)  Trial was ineffective for neglecting to question officer Harris, concerning whether he had helped Derrinda get out of criminal charges.

(aa) Trial counsel was ineffective for failing to cross examine law enforcement officers, concerning there failure to handle "buy money" under the procedures and guidelines set for th by South Carolina in S.C. Code Ann. 44-53-530.

(bb) Trial counsel was ineffective failed (sic) to make a motion to continue the trial, to investigate the State witness, Ms. Maxon, to know what statements she would give to prepare a defense.

(cc) Trial counsel was ineffective for failing to object to testimony from officer Marvin Brown, which was, in effect, hearsay inasmuch as it relayed to the jury information conveyed to the witness by parties not available at trial for cross examination.

(dd) Trial counsel was ineffective for failing to object at the close of the case and during closing argument, the Solicitor made the following comments to the jury, How do we know she didn't take the crack in there with her? How do we know that? Well officer Brown told you she had been searched," which is hearsay, because the state never produced the female officer who searched the female informer.

(ee) Trial counsel was ineffective for failing to object at the close of the case and during closing argument. The Solicitor made the following comments to the jury, "Officer Brown said the voice that came across the wire that made the buy in that house is Titus Williams." There is no foundation as to any knowledge of Applicants voice.

(ff) Trial counsel was ineffective for failing to object to the Solicitors question to the informant. "And what did you ask him for? To purchase crack cocaine, a $100.00 worth of crack cocaine." When there was no evidence of any of these words being uttered on the audio of the alleged transaction.

(gg) Trial counsel was ineffective by soliciting testimony, incriminating, irrelevant and incompetent to establish any of the elements necessary to a conviction of the Applicant.

(hh) Trial counsel was ineffective for failing to move for a direct verdict on the distribution of crack cocaine within a ½ mile radius of York Recreation Center.

(ii) Trial counsel was ineffective for failing to object to the trial court charge to the jury on distribution within ½ mile of York Recreation Center.

(jj) Applicant was denied effective assistance of trial counsel failure to specifically object to the State's failure to produce a material witness for cross-examination.

(PCR App. 484). Then a "Supplement to Application for Post-

8

Conviction Relief", was filed May 23, 2005, in which the

following was raised:

> (D)  The applicant was denied effective assistance
> of trial counsel by counsel's failure to move to
> suppress drug evidence obtained by illegal
> surveillance.
>
> (E)  The applicant was denied the right to
> effective assistance of appellate counsel by
> counsel's failure to raise the issue of whether
> trial court erred in denying his motion to dismiss
> all charged based on a fatally defective arrest
> warrant.
>
> (F)  The applicant was denied the right to
> effective assistance of trial counsel by counsel's
> failure to object to an indictment that failed to
> confer subject matter jurisdiction.
>
> (G)  The applicant was denied the right to
> effective assistance of appellate counsel by
> counsel's failure to raise issue of trial court's
> denial of motion for mistrial based on
> inadmissable character evidence.
>
> (H)  The applicant was denied the right to
> effective assistance of trial counsel when counsel
> failed to object to solicitor's vouching for
> credibility of it's witness in closing argument.
>
> (I)  The applicant was denied the right to
> effective assistance of appellate counsel by
> counsel's failure to raise the error of trial
> judge's denial of trial counsel's request for a
> charge on "adverse inference" from solicitor's
> failure to produce a material witness.
> (J)  The applicant was denied due process of law
> as guaranteed by the fourteenth amendment due
> to solicitor's knowing use of perjured testimony.
>
> (K)  The applicant was denied the right to
> effective assistance of trial counsel by counsel's
> solicitation of testimony that put his character
> into evidence and solicitation of prior bad acts
> evidence.

9

> (L)   The applicant was denied the right to
> effective assistance of trial counsel by counsel's
> failure to request specific instructions.
>
> (M)   The applicant was denied the right to due
> process of law by the solicitor's use of hearsay
> testimony and denial of the right to
> confrontation.

(PCR App. 490). A "Second Supplement" was filed on May 25, 2005,

in which the following was raised:

> (N)   the applicant was denied his rights under the
> sixth and fourteenth amendment of the United
> States Constitution and his rights under article 1
> § 3 and article 1 § 14 of the South Carolina
> Constitution as the result of ineffective
> assistance of his trial counsel.

(PCR App. 507). Yet another Supplement was filed on June 20,

2005, in which the following issues were raised:

> 1.   Counsel rendered ineffective assistance by
> not objecting to Respondent's offering to use
> Applicant's prior drug conviction for impeachment
> purposes and by providing erroneous advise to
> Applicant.

(PCR App. 509). An Amended Application for Post-Conviction

Relief was filed on October 28, 2005, in which the following was

raised:

> 1.   The Applicants Indictments were "sham legal
> processes" that failed to confer subject matter
> jurisdiction upon the trial court to convict him.

(PCR App. 514). Another Supplement was filed on July 26, 2006,

in which the following was raised:

> 1.   Trial counsel was ineffective for failing to
> object to police officer's hearsay testimony and
> move to strike said testimony on the basis that no
> foundation had been laid for its introduction.

                2.   Trial counsel was ineffective for failing to
                investigate and/or move for an adjournment or
                continuance to Subpoena a material witness.

(PCR App. 518).

An evidentiary hearing in Petitioner's PCR was held before the Honorable Lee S. Alford on August 3, 2006. Petitioner was present and represented by counsel Thomas Quinn, Esquire. (PCR App. 524). Petitioner called himself to testify at the hearing, the State called trial counsel. On October 24, 2006, Judge Alford filed an Order of Dismissal with Prejudice, in which he rejected Petitioner's claims for relief. (PCR App. 599).

Petitioner then filed a pro se Motion to Alter or Amend on November 2, 2006 (PCR App. 616), and the same day, his counsel Quinn filed a "Brief Concerning Date of Indictment". (PCR App. 619). The post-trial motion was denied by Order dated November 13, 2006. (PCR App. 622).

A notice of appeal was filed with the South Carolina Supreme Court with regard to the PCR. Tara Shurling, Esquire, represented Petitioner on PCR appeal. On January 16, 2008, Shurling filed with the state supreme court a Petition for Writ of Certiorari, in which she asserted the following issues on behalf of Petitioner:

                I.  Was defense counsel ineffective in failing to
                move to strike as hearsay evidence concerning the
                thoroughness of the search of the confidential
                informant, where there was no evidence that the
                witness had firsthand knowledge of the search?

II. Was defense counsel ineffective in failing to object to the solicitor's improper reliance in closing argument on hearsay evidence about the search of the confidential informant?

III. Was defense counsel ineffective in failing to object to the solicitor's closing remarks that improperly vouched for the confidential informant's credibility?

IV. In the alternative to Questions I, II, and III, did the post-conviction relief court err in denying the Petitioner's motion to alter or amend the judgment?

The State filed a Return to the Petition for Writ of Certiorari on February 28, 2008. The case was transferred to the South Carolina Court of Appeals by order dated July 11, 2008. On February 23, 2009, the court of appeals issued an order in which it denied the petition for writ of certiorari. Attorney Shurling then filed a Petition for Rehearing dated March 10, 2009, to which the State responded by letter. On May 4, 2009, the court of appeals denied the petition for rehearing, and the Remittitur was issued on June 8, 2009.

The respondent's motion for summary judgment was filed on October 23, 2009. On October 26, 2009, the petitioner was provided a copy of the respondent's summary judgment motion and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The petitioner filed an opposition to the motion on November 19,

12

2009. Hence it appears consideration of the motion is appropriate.

The following documents have been made part of the file here:

>1. Appendix including: Index; Record on Appeal; Notice of Appeal; Final Anders Brief of Appellant; Opinion of court of Appeals; Application for Post-Conviction Relief; State's Return; Supplement to Application for Post-Conviction Relief; Second Supplement to Original Application for Post-Conviction Relief with Memorandum of Law in Support; Third Supplement to Application for Post-Conviction Relief; Supplement to Post-Conviction Relief Application; Supplement to Application for Post-Conviction Relief; Second Supplement to Original Application for Post-Conviction Relief with Memorandum of Law in Support; Supplement to Application for Post-Conviction Relief with Memorandum of Law in Support; Amended Application for Post-Conviction Relief; Supplement to Application for Post-Conviction Relief; Supplement to Application for Post-Conviction Relief with Memorandum of Law in Support; Blank Page; Post-Conviction Relief Transcript; Order of Dismissal; Form 4, Civil Judgment; Notice of Motion and Motion to Alter or Amend Judgment; Brief Concerning Date of Indictments; Order denying Motion to Alter or Amend Judgment; SCDC Records; Clerk of Court Records; Notice of Appeal;

| 2. | September 11, 2003 | Initial Anders Brief of Appellant; |
| 3. | October 8, 2003 | Pro-Se Brief of Appellant; |
| 4. | December 5, 2003 | Anders Response Brief; |
| 5. | January 2, 2004 | Anders Response Brief; |
| 6. | January 20, 2004 | Anders Response Brief; |
| 7. | June 8, 2004 | Remittitur; |

13

8.  November 9, 2006      Letter;

    9.  August 20, 2007       Order;

    10. January 16, 2008      Petition for Writ of
                              Certiorari

    11. February 28, 2008     Return to Petition for
                              Writ of Certiorari;

    12. February 23, 2009     Order;

    13. March 10, 2009        Petition for Rehearing;

    14. March 13, 2009        Informal Reply to
                              Petition for Rehearing;

    15. May 4, 2009           Order Denying Petition
                              for Rehearing

    16. June 8, 2009    Remittitur.

## **HABEAS ALLEGATIONS**

Petitioner raised the following allegations in the instant

petition for Writ of Habeas Corpus under 28 U.S.C. § 2254:

> **Ground One:**  Defense counsel was ineffective for
> failure to strike hearsay evidence searching of
> informant where know evidence exsisted of
> firsthand knowledge of search. (sic).
>
> **Ground Two:**  Defense counsel was ineffective for
> failure to object to the solicitors improper
> statement in closing arguements about the
> confidentality of informants reliability on
> hearsay evidence about the search. (sic).
>
> **Ground Three:** Defense counsel was ineffective for
> failing to object to the solicitors closing
> remarks that vouched for the credibility of the
> informant without evidence to support statement.
>
> **Ground Four:** P.C.R. court erro in refusing/denying
> the petitioners motion to alter or amend judgment.
> (sic).

## APPLICABLE LAW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective April 24, 1996, is applicable to this action filed in 2009. Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

The Supreme Court expounded upon this language in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495 (2000). Writing for the majority with respect to this matter, Justice O'Connor stated that a state court's decision can be contrary to the Supreme Court's precedent in two ways: first, "if the state court arrives at a conclusion opposite to that reached by the Court on a

15

question of law.  Second, a state-court decision is also contrary to the Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" that of the Supreme Court.  <u>Id</u>. at 1519.

Justice O'Connor further stated that "[t]he text of § 2254(d)(1) ... suggests that the state court's decision must be substantially different from the relevant precedent of the Court."  <u>Id</u>.  She added that a "state-court decision will also be contrary to the Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from the Court precedent."  <u>Id</u>. at 1519-20.  Even if "the federal court considering the prisoner's habeas application might reach a different result applying" relevant Supreme Court precedent, so long as the state court applied the correct legal rule from Supreme Court cases, such a "run-of-the-mill" state court decision could not be deemed "contrary to" Supreme Court precedent.  <u>Id</u>. at 1520.

As for the "unreasonable application" prong of § 2254(d)(1), Justice O'Connor stated that a state court decision involves an unreasonable application of the Court's precedent if "the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the

particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of the Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. Justice O'Connor added that "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 1522. In making the "unreasonable application" inquiry, "a federal habeas court ... should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

In another change brought by the AEDPA, 28 U.S.C. § 2254(e)(1) now states that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." The touchstone for a reasonable determination is "whether the determination is at least minimally consistent with the facts and circumstances of the case." Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir.), cert. denied, 522 U.S. 819 (1997).

17

## THE HABEAS CORPUS EXHAUSTION REQUIREMENT

Relief under Section 2254 may be had only after a habeas petitioner has exhausted his state court remedies: "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas corpus. Claims not so raised are considered defaulted." Breard v. Green, 523 U.S. 371, 375, 118 S.Ct. 1352 (1998), citing Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497 (1977); see also, 28 U.S.C. § 2254(b). The theory of exhaustion is based on 28 U.S.C. § 2254, which gives the federal court jurisdiction of habeas petitions. See generally, O'Sullivan v. Boerckel, 526 U.S. 838, 119 S.Ct. 1728, (1999). The court's exhaustion requirements under § 2254 are explained in Matthews v. Evatt, 105 F.3d 907, 910-911 (4th Cir.), cert. denied, 522 U.S. 833, 118 S.Ct. 102 (1997). In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues which have been properly presented to the highest state courts with jurisdiction to decide them.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner brought claims of ineffective assistance of

counsel. The United States Supreme Court has adopted a two-prong test for use in determining whether a criminal defendant received adequate assistance of counsel within the mandates of the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).

The first-prong of the test is competence: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the sixth amendment." Id. at 687, 104 S.Ct. at 2064. In evaluating a claim of attorney incompetence, the court must indulge a strong presumption that counsel's conduct was within the wide-range of reasonable professional assistance. Id. at 689, 104 S.Ct. at 2065; see also, Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977) (adopted McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441 (1970). Also a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct.

The second Strickland prong is prejudice: "The defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

19

<u>Strickland v. Washington</u>, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068 (1984).

Since the burden is on the petitioner to show both incompetence and sufficient prejudice, an inquiry into whether counsel's performance was deficient may begin within an inquiry of either prong of the <u>Strickland</u> test. <u>Strickland</u>, 466 U.S. at 697.

## DISCUSSION

A review of the record and relevant case law reveals that the Petitioner is not entitled to habeas corpus relief.

As a preliminary matter, the respondent concedes that this petition is timely and that all grounds raised have been exhausted as required by 28 U.S.C. §2254 b. Further, there is no argument that any claim presented here has been procedurally defaulted in the courts of South Carolina. Petitioner's grounds for relief will be reviewed seriatim.

Petitioner's first ground for relief is his contention that he is being held in violation of his constitutional right to the effective assistance of counsel because, counsel "failed to strike hearsay evidence searching of informant where know evidence existed of firsthand knowledge of search." (sic). This is the first ground presented in the Petition for a Writ of Certiorari from the denial of PCR relief as, "Was defense counsel ineffective in failing to move to strike as hearsay evidence

concerning the thoroughness of the search of the confidential informant, where there was no evidence that the witness had first hand knowledge of the search?"

The PCR judge, Judge Lee S. Alford, reviewed the controlling Supreme Court law regarding the right to the effective assistance of counsel at trial, citing Strickland v. Washington, supra. He held an evidentiary hearing, reviewed the trial transcript and other records pertaining to the petitioner. In his order, Judge Alford reviewed the testimony of the witnesses at the hearing. He found that trial counsel's testimony was credible, that the petitioner's testimony was not credible, and that he weighed their respective testimony accordingly.

Judge Alford found that Petitioner failed to carry his burden to show that his lawyer's representation fell below reasonable professional norms or that he was prejudiced by the alleged deficient representation. The judge also found that Petitioner failed to present any probative evidence regarding the allegation.

Petitioner again contended counsel was ineffective in failing to move to strike the hearsay as to the thoroughness of the search before the state court of appeals which denied the petition for writ of certiorari.

The transcript of the trial showed that Lieutenant Marvin Brown of the York County Multijurisdictional Drug Enforcement

Unit (YCMU) testified that he and other officers set up a plan to have a confidential informant wear a wire and make a controlled purchase of crack cocaine from a dealer known as "T". (App. p. 91-93). The solicitor asked Lieutenant Brown what steps were taken to carry out this plan. Brown responded:

We placed a body wire on the informant; we had a female dispatcher search the informant to make sure there was not money or additional drugs on the informant. Placed a body wire on the informant. We went out and we searched her car. All this is standard precautions. We searched her car. She got into her car and we got into a van, a minivan behind her, and we left the Moss Justice Center, following her to the BP Station on 321 South.

(App.p.94).

On cross-examination, Brown testified, "That Friday afternoon when we were talking about making a buy and at Billy's house, a female dispatcher was there and there and helped search her down, wire, several officers were there that Friday." (App.pp.142-143). The following exchange occurred during cross-examination of

Brown:

Q: And you said before she went over there she was searched?
A: Yes.
Q: Was she strip searched?
A: The procedure, no, she was not strip searched. We don't strip search informants but we search them as thoroughly as we can.
Q: You know if she was wearing a bra?
A: I didn't search her. The officer, the female officer that did search her will be here today.

(App.pp.149-150).

The confidential informant on redirect examination read the statement she gave the night of the transaction. In it, she

22

statement she gave the night of the transaction. In it, she stated: "The officers then searched my vehicle, searched me, and wired me." The end of her statement was as follows: "And I left and drove back to the Moss Justice Center to meet with the officers. I gave the crack to Officer Harris and he searched my vehicle then I was searched by a female before leaving." (App. 207-208).

Sergeant Terrill Harris, also with the YCMU, testified, "The meeting was set up. She, [the informant] was searched and wired by one of our PSA's at the Sheriff's Office and she was also given $60 in governmental funds or money."
(App.p. 287).

Here there simply was no hearsay testimony. The essence of hearsay is a statement which was made out of court being offered as testimony in court to prove the truth of the matter. Here Lieutenant Brown only testified to the facts that he ordered a female dispatcher to search the informant and that normal procedure did not involve a strip search. He did not offer any statement made out of court by himself or any other person, nor did he testify to what the results of the search were. The same point goes for Sergeant Harris, who also stated the facts that the officers had a female dispatcher search the informant. Since there was no impermissible hearsay, then counsel could not have been deficient, nor Petitioner prejudiced from counsel's failure

to object since there simply were no objectionable grounds. See

e.g., Hough v. Anderson, 272 F.3d 878 (7th Cir. 2001)

(ineffective assistance claims based on failure to object are

tied to the admissibility of the underlying evidence; if evidence

admitted without objection was admissible, then the complaint

fails both prongs of the Strickland test, as it was neither

deficient nor prejudicial). Petitioner is not entitled to habeas

relief on this ground.

Petitioner's second ground for relief is as follows:

"Defense counsel was ineffective for failure to object to the

solicitor's improper statements in closing arguments about the

confidentiality of informants reliability on hearsay evidence

about the search." (sic). Petitioner contends counsel was

ineffective for failing to object to the solicitor's closing

argument inasmuch as she allegedly vouched for the informant's

credibility and argued regarding the search by police of the

informant.

In his closing statement, the solicitor argued that although

the informant admitted she felt pressure to cooperate with police

due to the possibility of losing her children, she also admitted

being a crack addict, and admitted agreeing to make the buy for

police. The prosecutor also noted the informant gave a statement

after the sale identifying Petitioner as the man who sold her the

drugs, and affirmed that at trial, even though she was afraid of

the petitioner. The solicitor continued:

> Now although afraid she talked to you about her addiction
> and appeared apologetic I would submit to you. Appeared that
> she was embarrassed to tell you about that, but she did, and
> she told you DSS had been involved in her family and I
> submit to you she's a credible witness.

(App. 351).

The Petitioner testified at the PCR hearing that this was
improper vouching and that trial counsel should have objected.
He testified that the informant's credibility was crucial as she
was the only eyewitness to the drug transaction. (App. 540-543).
Trial counsel testified that "it must have slid by me in the
closing argument, I just did not see that and I don't remember
what was said." App. 582.

The PCR court stated on the record that the solicitor's
comment was proper. The court noted that there is a difference
between saying, "I'm telling you she wouldn't tell a lie..." and
"I submit to you..." (App. 596). In its written order, the PCR
court found no ineffective assistance in this regard and found
that the comments did not constitute vouching. The PCR court
further found that the outcome of the trial would not have been
different had trial counsel objected. (App. 611). The issue was
raised on PCR appeal, and the state court of appeals denied
certiorari.

Again, the state court's decision was not contrary to, nor
did it involve an unreasonable application of clearly established

25

Federal law, as determined by the Supreme Court of the United States. Further, the state court decisions were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner's third ground for relief is as follows: "Defense counsel was ineffective for failing to object to the solicitors closing remarks that vouched for the credibility of the informant without evidence to support statement." Petitioner again contends his counsel failed to object to the solicitor's supposed vouching of the victim in closing. This issue has been addressed in ground two, supra, and this ground should be dismissed for the same reasons. Again, the argument was not objectionable, and therefore, Petitioner is not entitled to relief on this ground.

Petitioner's fourth and final ground for relief is as follows: "P.C.R Court erro (sic) in refusing/denying the petitioners motion to alter or amend judgment." Here, Petitioner contends the PCR judge was wrong to deny his motion to alter or amend his order. However, alleged defects in state postconviction procedures are not cognizable in a federal habeas corpus action. Wright v. Angelone, 151 F.3d 151 (4th Cir. 1998); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas

review). Nonetheless, there is no merit to the claim, as the only substantive issues raised along with this issue on PCR appeal were the three substantive issues which have been discussed supra in the three preceding grounds. he is not entitled to relief on this ground.

In sum, no state decision was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. Further, no state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the respondent's motion for summary judgment be granted and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
February ___8___, 2010

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).